## **AFFIDAVIT**

I, Brian P. LeBlanc, being duly sworn, declare and state as follows:

### Introduction

1.     I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code. I have been employed by the FBI for about nine years. Prior to joining the FBI I was a police officer for approximately seven years. I have received specialized training in the identification and investigation of organized criminal groups and terrorist organizations. I have attended schools and training seminars dealing with weapons of mass destruction, terrorism investigations, narcotic investigations, and electronic and physical surveillance.

2.     I am currently assigned to a Counter-terrorism Squad in the FBI's Boston field office. Among other things, I am responsible for conducting national security investigations and investigations into violations of federal criminal laws, including violent crimes and threats.

3.     The following information is based on my observations during the course of this investigation and information supplied to me by other investigators. The purpose of this affidavit is limited to showing that the warrantless arrest of Edward McLarnon on November 6, 2015, was supported by probable cause and that probable cause exists to support the issuance of criminal complaint charging Edward McLarnon with violations of

Title 26, United States Code, Section 5861(d). Accordingly, this affidavit does not include each and every fact known by me or other investigators concerning this investigation.

## Investigation

4. In and around early October 2015, a cooperating witness (hereinafter "the CW") provided information to the FBI that Edward McLarnon, a Massachusetts resident, was planning to murder several individuals. The FBI established an email account to facilitate communication with McLarnon. I posed in an undercover capacity as the CW for the purposes of communicating with McLarnon via the email account. Communication through the email account was accomplished by leaving messages in the account's draft folder. Thus, messages could be read and left by simply logging into the account without actually receiving or sending an email. The only individuals the FBI told about the email account were the CW and, through the CW, McLarnon.

5. On or about October 13, 2015, the following message, apparently drafted by McLarnon, appeared in the draft folder of the email account:

    Wish list

    A – a .22 handgun – the type the Mafia uses
    B – a pistol w/silencer – Ryan will specify
    C – an AK-47 or equivalent with 4 clips and lots of bullets
    D – a sniper's rifle w/scope – Ryan will specify
    E – a bunch of grenades
    F – dynamite w/caps and remote detonation
    G – C4 w/caps and remote detonation

6. On or about October 19, 2015, the following message, also apparently drafted by McLarnon, appeared in the draft folder of the email account: "Can I get a silencer for the

snipers rifle?"

7. On or about October 20, 2015, the CW placed a consensually-recorded telephone call to McLarnon. In that conversation, McLarnon said he "really … want[ed] to know more about uh getting that stuff," which, based on my training and experience, I understand to be a reference to the weapons McLarnon had included on his "Wish List." At the FBI's direction, the CW told McLarnon to contact an associate of the CW who would supply the weapons. The "associate" was an FBI agent working in an undercover capacity (hereinafter "the UC"). The CW provided McLarnon with a cell phone number in order to contact the CW's "associate" and instructed McLarnon to, "Just text him happy birthday. That's it. Nothing else. Don't call him. That way it's nice and anonymous. That way he'll know you're serious about getting everything."

8. Shortly after McLarnon and the CW spoke on October 20, 2015, McLarnon sent a text message reading, "Happy birthday," to the phone number the CW had provided.

9. On October 26, 2015, the following message, apparently drafted by McLarnon, appeared in the draft folder of the email account: "Can I get the AK-type with silencer? everything w/silencers and clips?" In response, an FBI agent posted a message in the draft folder of the email account telling McLarnon that the CW's "associate" would call McLarnon later that day.

10. Later on October 26, 2015, the UC posing as the CW's associate called McLarnon and the two men agreed to meet a location in New Hampshire on October 28, 2015.

11. On October 28, 2015, the UC met with McLarnon at a location in New Hampshire. The meeting was audio and video recorded. I have listened to the audio

recording and have reviewed a draft transcript of the conversation between the UC and McLarnon. Among other things McLarnon told the UC the following:

    a. McLarnon owns a .38 caliber revolver and a .22 caliber rifle. McLarnon had previously told the CW during a consensually-recorded conversation, that he stored the .22 caliber rifle in storage locker.

    b. McLarnon wants to obtain a pistol with a silencer "to do close work," which I interpret to mean that McLarnon wants to shoot a victim at close range.

    c. In the context of describing his experience shooting firearms, McLarnon stated that he wanted to go into the office of "the guy that kidnapped my son … my ex-wife's husband." Later in the conversation, McLarnon stated that there might be cameras near the office of his ex-wife's husband, "but I have a mask, a surgical mask." McLarnon stated that he wanted to use a handgun to kill his ex-wife's husband.

    d. In response to the UC asking "what I can do to help you fix your problem," McLarnon stated, "Okay, well I want a pistol. Well, see, my .38 is a revovlver. So it makes a lot of noise, even if put a thing on it. It would still make a lot of noise." He further said, "I want to be able to go into an office about this big, do my business, and leave without … the adjoining offices knowing what's going on." I interpret the statement "do my business" to be a reference to killing somebody.

    e. McLarnon stated that he had fired his .38 caliber revolver, his .22 caliber rifle, and an "AK."

  f. At the end of the meeting, McLarnon told the UC that he wanted a .22 caliber handgun, grenades, and that he wanted items that could not be traced.

12. Between October 30 and November 2, 2015, in communications through the draft folder of the email account, McLarnon agreed to meet the UC again on November 5, 2015. The FBI posted a message inviting McLarnon to provide the weapons he owns to the UC as partial payment for weapons McLarnon sought to purchase.

13. On November 5, 2015, McLarnon and the UC met again at a location in New Hampshire and continued discussions ostensibly aimed at the UC providing weapons to McLarnon. McLarnon gave the UC approximately $550 as a down payment for numerous weapons, including grenades and a .22 caliber handgun with a silencer, which the UC agreed to deliver at a future date. In addition, McLarnon gave the UC a .38 caliber handgun. The two men agreed that the UC would return the .38 caliber handgun to McLarnon along with custom-made ammunition that the UC would procure on McLarnon's behalf.

14. At about 11:30 a.m. today, November 6, 2015, McLarnon and the UC met again at a location in New Hampshire so that McLarnon could take delivery of the weapons he asked the UC to provide. McLarnon paid the UC an additional $150. The UC turned over a bag containing a .22 caliber firearm equipped with a silencer, two grenades, an AK-47 firearm, and several rounds of ammunition. McLarnon took possession of the bag containing the weapons, at which time FBI agents and other law enforcement officers executed his arrest.

Relevant Statute

15. Title 26, United States Code, Section 5861(d) provides, in pertinent part, that it is unlawful for any person to "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." Under Title 26 §§ 5845(a)(7), (8),and (f)(1)(B) a silencer and grenade are defined as firearms that must be registered in the National Firearms Registration and Transfer Record.

Conclusion

16. Based on the information in this Affidavit, probable cause exists to believe that Edward McLarnon has committed the offense of receiving an unregistered firearm in violation of Title 26, United States Code, Section 5861(d). Accordingly, I request that this Honorable Court issue a Complaint against Edward McLarnon.

Brian P. LeBlanc, Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 6th day of November, 2015, at Concord, New Hampshire.

Daniel J. Lynch
United States Magistrate Judge