UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| United States of America | \* |
| | \* |
| v. | \*   No. 1:15-cr-00212-SM |
| | \* |
| Edward McLarnon | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**SENTENCING MEMORANDUM AND MOTION FOR VARIANT SENTENCE**

Defendant Edward McLarnon, through standby counsel, Ramsdell Law Firm, P.L.L.C., submits this memorandum in advance of the sentencing hearing scheduled for May 10, 2018. In sum, Mr. McLarnon objects to the advisory sentencing guidelines range calculation aet forth in the Presentence Investigation Report ("PSR") and requests a variant sentence five levels below the correct advisory guidelines range[1] based on "the characteristics of the defendant . . . [,]" pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005) because he suffers from an extraordinary mental condition that contributed to his offense conduct.

**LEGAL STANDARD**

Since *Booker*, although the sentencing process commences with a United States Sentencing Guidelines calculation, the guidelines are merely "advisory," and district courts are required to consider all of the factors listed in 18 U.S.C. §3553(a) in imposing sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *Booker*, 543 U.S. at 262. A district court should begin its sentencing analysis with the advisory guidelines calculation, then its "next steps should include hearing argument from parties as to the proper sentence in a particular case, weighing the applicability of the sundry factors delineated in 18 U.S.C. §3553(a), reaching an

---

[1]1 For the reasons set forth below, the advisory guidelines range, properly calculated, is level 39, 262-327 months.

ultimate sentencing determination, and explicating that decision on the record." *United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008) (*citing Gall*, 552 U.S. at 49-50).

The paramount directive in 18 U.S.C. §3553(a) is that the Court must impose a sentence that is "*sufficient, but not greater than necessary,* to comply with" the purposes of sentencing. See *id.* (emphasis added). Section 3553(a) directs sentencing courts to consider a number of factors, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant ....

*Id.* The importance of, and rationale for, the post-*Booker* and *Gall* sentencing procedure described above has been summarized as follows:

> This sequencing necessitates a case-by-case approach, the hallmark of which is flexibility. In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court "should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52.

*Martin*, 520 F.3d at 91.

## **ADVISORY GUIDELINES CALCULATION IN THE PSR**

On January 30, 2018, a jury found Mr. McLarnon guilty of the following four offenses: Receiving an Unregistered Firearm in violation of 26 U.S.C. §§ 5861(d) and 5871; Receiving a Firearm with Intent to Commit a Crime in violation of 18 U.S.C. § 924(b); Receiving Explosive

2

Materials in violation of 18 U.S.C. §§ 842(a)(3)(A) and 844(a)(1); and Receiving Explosive Materials with Intent to Harm Persons or Property in violation of 18 U.S.C. § 844(d). PSR pp. 1-2, ¶ 9. The two former and two latter convictions are grouped for sentencing pursuant to USSG § 3D1.2(d). PSR ¶ 28.

The Base Offense Level ("BOL") for each group is 33 because "USSG § 2K2.1 directs the use of USSG § 2X1.1 (Attempt, Solicitation, or Conspiracy)." PSR ¶¶ 35, 41. The PSR does not include any adjustments for specific offense characteristics or role in the offense. PSR ¶¶ 36, 38. The PSR includes a six-level victim related adjustment for each group because two of the intended victims are "official victims ... and the offenses of conviction were motivated by their status." PSR ¶ 29. Two levels are added for Obstruction of Justice pursuant to USSG § 3C1.1 because of "the defendant's commission of perjury and attempt to obstruct the administration of justice." PSR ¶ 31.

The Adjusted Offense Level ("AOL") for each group is 41. PSR ¶¶ 40, 46. Two levels are added for a multiple count adjustment. PSR ¶ 47. Mr. McLarnon did not receive credit for Acceptance of Responsibility. PSR ¶ 52. Consequently, Mr. McLarnon's Total Offense Level ("TOL") pursuant to the PRS is 43. PSR ¶ 53.

Mr. McLarnon has no prior convictions, his criminal history score is zero, and his criminal history category ("CHC") is I. PSR ¶ 57. At CHC I, TOL 43, the guidelines imprisonment range is life. PSR ¶ 78. "However, the statutorily authorized maximum sentences are less than the maximum applicable guideline range, therefore, the guideline range is 480 months." PSR ¶ 78.

**OBJECTIONS TO ADVISORY GUIDELINES CALCULATION IN THE PSR**

The cross reference in USSG § 2K2.1(c) provides in pertinent part as follows:

3

> (1) If the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense, apply--
>
> > (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above ....

Thus, because the jury found that Mr. McLarnon "possessed ... a firearm or ammunition cited in the offense of conviction with ... intent that it would be used ... in connection with another offense, [the applicable guideline is] § 2X1.1 (Attempt, Solicitation, or Conspiracy) ...." *Id.*

The PSR incorrectly provides that the "substantive offense in this case is First Degree Murder ...." PSR ¶¶ 26, 27. The First Degree Murder guideline, § 2A1.1, applies "in cases of premeditated killing ... [or] when death results from the commission of certain felonies." Application Note 1 to USSG § 2A1.1. Here, the jury found that Mr. McLarnon committed certain acts with the intention of harming others in the future. However, it is beyond dispute that neither a premeditated killing nor a death resulting from a felony occurred. As a result, the substantive offense is not First Degree Murder.

Paragraphs 26 and 27 of the PSR explain the use of USSG § 2X1.1 (Attempt, Solicitation, or Conspiracy) for each group of convictions because there is an express offense guideline section for Attempted Murder, § 2A2.1(a). The PSR correctly concludes that the BOL for Attempted Murder is 33. PSR ¶¶ 26, 27. However, the PSR incorrectly finds that there are no applicable specific offense characteristics. *Id.*

USSG 2X1.1(b)(1) provides as follows:

**(b) Specific Offense Characteristics**

4

> **(1)** If an attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.

USSG 2X1.1(b)(1) applies because it is part of § 2X1.1, the applicable guideline when a defendant is found to have "possessed ... a firearm or ammunition cited in the offense of conviction with ... intent that it would be used ... in connection with another offense ...." *See* § 2K2.1(c)(1)(A).

The PSR incorrectly states that "the circumstances demonstrate that [Mr. McLarnon] was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." PSR ¶¶ 26, 27. Mr. McLarnon was apprehended, but he was not close to completing all of the acts necessary to complete either First Degree Murder or Attempted Murder. "To prove attempt, the government must establish an intent to commit the substantive offense and a substantial step towards its commission that is more than preparation but less than the last act necessary to commit the crime itself." *United States v. LiCausi*, 167 F.3d 36, 47 (1st Cir. 1999). Consequently, intent and mere preparation are insufficient to prove Attempted Murder. A "substantial step" towards commission of the offense is required.

In *LiCausi*, the First Circuit described conduct constituting a "substantial step" towards the commission of the substantive crime:

> In *Chapdelaine*, for example, the defendant and his associates had "'cased' the BayBank branch and the armored truck, positioned stolen vehicles for an escape, acquired weapons and disguises, arrived at the scene ready to commit the crime and were frustrated only by an accidental change in the truck's schedule." *Chapdelaine*, 989 F.2d at 33. In another case, the group's conduct "in casing the bank, stealing a car, and arriving armed at the bank shortly before the Wells Fargo truck was to arrive, constituted a 'substantial step' toward the robbery that demonstrated that this [intent to commit the robbery] was no idle whim." *United States v. Del Carmen Ramirez*, 823 F.2d 1, 2 (1st Cir.1987).

5

> The robbers in *Del Carmen Ramirez* were alerted to a police stakeout of the robbery location, tried to put their guns in some tall grass and leave the area on foot, and were subsequently arrested. *See id.* LiCausi's and Subocz's preparations were virtually identical to those in *Del Carmen Ramirez*. The reason for the abandonment, be it impossibility, as in *Chapdelaine,* or fear of capture, as in *Del Carmen Ramirez,* is irrelevant. The only issue is whether the actions Subocz and LiCausi took before abandoning their plans constituted the requisite "substantial step." Given First Circuit precedent, we think it clear that they did.

*LiCausi*, 167 F.3d at 48. The conduct for which Mr. McLarnon was convicted falls short of the conduct necessary to constitute a substantial step toward the commission of attempted murder. Mr. McLarnon is entitled to the 3-level decrease provided in USSG § 2X1.1(b)(1) because he neither had completed nor was about to complete all of the acts necessary for attempted murder.

The government's reliance on an Eleventh Circuit case, *United States v. Scognamiglio*, 424 Fed. Appx. 809 (11th Cir. 2011), is misplaced. In *Scognamiglio,* the district court found all the following facts present, which in combination constituted a substantial step:

> Scognamiglio ordered a silencer, Scognamiglio gave an undercover informant a barrel to be threaded for a silencer and a gun in payment for the silencer, and Scognamiglio traveled to a meeting where he was to pick up the silencer. The transcripts of the meeting between Scognamiglio and the confidential source also contained evidence of Scognamiglio's insistence on being the triggerman, of his specific identification of the victims, and of his surveillance of potential locations for the murders.

*Id.* at 811. Implicit in "Scognamiglio's insistence on being the triggerman" and explicit in "his surveillance of potential locations for the murders[,]" is a level of effort and planning absent in this case. The lack of planning and the effort while engaged in such planning is the difference between a substantial step and mere preparation. Compare *LiCausa* with *Scognamiglio.*

Paragraph 29 provides that the offense level for each group of convictions is increased six levels because U.S. District Judge Saylor and former Massachusetts Attorney General Martha Coakley are official victims as that term is defined in USSG § 3A1.2(a)(1)(A) and (B), and the offense of conviction in each group was motivated by such status, USSG § 3A1.2(a)(2) and (b).

6

The finding is incorrect regarding Ms. Coakley. The evidence demonstrated that any ill-will harbored by Mr. McLarnon against Ms. Coakley was rooted in Ms. Coakley's status as a private attorney for Deutsche Bank, not because of her status as former Massachusetts Attorney General.

The correction to Ms. Coakley's status results in a reduction of the TOL by 1 level.[2] The PSR increased the advisory guidelines range by 2 levels because the two groups of convictions were estimated to have the same AOL, 41. PSR ¶ 47. However, the correction of Ms. Coakley's status eliminates the 6-level victim related adjustment for the "Group 1" offenses. *See* p. 11, ¶ 37 (Group 1 victims are Mr. Douglas and Ms. Coakley). The AOL for Group 1 becomes 35. PSR ¶¶ 35-40. Because the two groups no longer have the same AOL, Mr. McLarnon is not assigned two levels pursuant to USSG § 3D1.4. Instead, Mr. McLarnon's advisory guidelines range is increased by only one level. USSG § 3D1.4.

Based on the foregoing, Mr. McLarnon's advisory guidelines calculation should be adjusted as follows: BOL 33; Specific Offense Characteristics -3; Victim Related Adjustment 6; Obstruction of Justice 2; AOL 38; Increase in Offense Level for Multiple Count Adjustment 1; and TOL 39. At CHC I, TOL 39, the advisory guidelines range is 262-327 months.

### REQUEST FOR VARIANT SENTENCE BASED ON EXTRAORDINARY MENTAL HEALTH CONDITION

In November 2017, Mr. McLarnon was the subject of a competency hearing. After receiving the expert reports and hearing the testimony from two psychiatrists the Court found Mr. McLarnon competent to stand trial. However, it is plain from the psychiatrists' reports and testimony, and the evidence produced at trial, including Mr. McLarnon's testimony, he has suffered for decades from a post-traumatic stress-like depression that has had an extraordinary

---

[2] Undersigned standby counsel raised the objection in response to the initial PSR. However, undersigned standby counsel erroneously stated that the objection would not result in a change to the advisory guidelines range.

impact on his life. The evidence was uncontroverted that Mr. McLarnon has seen a psychologist for a significant number of years.

It is beyond dispute that Mr. McLarnon's life and mental health have spiraled downward since what he refers to as "the lawful kidnapping of his son," through the loss of his livelihood and house, and ultimately contributed to the offenses for which the jury convicted him. Now, Mr. McLarnon is sixty-nine years old and faces the bleak prospect of spending the rest of his life in prison. If the Court were to afford Mr. McLarnon a five-level downward variance from the low end of the applicable advisory guidelines range based on his extraordinary mental health condition, it still would impose a sentence of 151 months. Mr. McLarnon would remain incarcerated at least until he is 80 years old.

Such a sentence would achieve the customary protective goals of sentencing and comply with the paramount directive in 18 U.S.C. §3553(a) for the Court to impose a sentence that is *"sufficient, but not greater than necessary ...."* the purposes of sentencing. Consequently, Mr. McLarnon requests a variant sentence of 151 months.

                                                         Respectfully submitted,

                                                         Standby counsel for

                                                         EDWARD MCLARNON,

Dated: May 2, 2018                   By: /s/ Michael D. Ramsdell
                                                  Michael D. Ramsdell (NH Bar No. 2096)
                                                  RAMSDELL LAW FIRM, P.L.L.C.
                                                  46 South Main Street
                                                  Concord, NH 03301
                                                  (603) 856-7536
                                                  mramsdell@ramsdelllawfirm.com

**CERTIFICATE OF SERVICE**

I certify that a copy of this pleading was provided to all counsel of record on today's date via electronic mail.

                                                     By: /s/ Michael D. Ramsdell
                                                         Michael D. Ramsdell